**IN THE COURT OF APPEALS OF IOWA**

No. 24-0547
Filed October 30, 2024

**IN THE INTEREST OF R.V. and J.V.,**
**Minor Children,**

**B.G.-T., Mother,**
    Petitioner-Appellee,

**S.V., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Nicholas Scott, Judge.

A father appeals the private termination of his parental rights under Iowa Code chapter 600A (2023) for failing to financially support his children. **AFFIRMED.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant.

David Burbidge of Johnston, Stannard, Klesner, Burbidge & Fitzgerald P.L.C., Iowa City, for appellee.

Karina A. Miller of Hayek, Moreland, Smith & Bergus, L.L.P., Iowa City, attorney and guardian ad litem for minor children.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

"Just have them forget me." That's how the father responded to an offer from the mother to set up a visit with his two young children.

After dissolving their marriage, the mother had physical care of the children while the father had visitation every other weekend. The father was also ordered to pay $75 in child support each month. The father did not follow through on either front. Despite receiving half of the proceeds from selling the marital home, the father never paid any child support. And the father likewise never exercised his visitation, relying on the mother to initiate visits or phone calls with the children. After about a year of little contact and no financial support, the mother moved to terminate the father's parental rights under Iowa Code chapter 600A (2023). The juvenile court agreed, terminating the father's rights for failing to pay child support and abandoning the children. The father appeals, challenging only whether the mother proved either ground for termination.

On our de novo review, we affirm. The father, although inconsistently employed, had sources of income that could have been used to financially support his children. While the father believed other debts or purchases were more pressing financial priorities, the father indeed could have provided some amount of child support and chose not to. Thus, the mother proved the father's rights may be terminated under section 600A.8(4). And because we need only find sufficient evidence to support one ground, we do not consider whether the mother proved abandonment by clear and convincing evidence.

I.

A mother and father share two children—a daughter born in 2015 and a son born in 2018. Their marriage was dissolved in February 2022. The dissolution decree placed the children in the mother's care and granted the father visitation every other weekend. The decree further required the father to pay $75 in child support per month, starting in August. The father participated in the mediation that resulted in the decree, signed the parenting plan addendum setting his visitation schedule, and received physical and digital copies of the decree.

Yet the father never paid any child support. As part of the dissolution, the mother and father sold their marital home in August 2022 and each received roughly $12,000 in proceeds. Despite the father's child-support duty starting that month, the father did not set aside $75 from the sale to make his first payment. Instead, he used the money to pay off debt and buy a car. And the father never made any child-support payments going forward—even when reminded of his obligation by the mother.

The father also did not exercise his visitation. To be sure, shortly after selling the home, the father fell on hard times. He struggled to find housing and ultimately resided in an RV on a friend's property. The father supported himself by taking odd jobs performing construction work. And because his car broke down shortly after buying it, transportation was difficult.

But the father had a phone and never tried to call his children. The few times they did speak on the phone, the calls were initiated by the mother. The father likewise never took the initiative to schedule visits. Once, the mother offered to have her boyfriend take the children "to whatever park is easiest for" the father.

The father declined the visit, refusing to be present with the mother's new boyfriend. Two months later, the mother contacted the father about setting up a visit, and the father responded, "Just have them forget me then. I probably won't survive the winter anyways." Indeed, the mother and father's communications tended to follow a pattern of the father expressing anger at not seeing his children, the mother offering to set up a visit, and the father not following through. In the end, between August 2022 and December 2023, the father had just three visits with his children—the daughter's first day of school in fall 2022, a visit at a mall in February 2023, and another mall meeting a few weeks later.[1]

In July 2023, the mother petitioned to terminate the father's parental rights under Iowa Code chapter 600A. The mother alleged the father failed to pay child support, the father abandoned the children, and the mother's new husband has been caring for the children and wishes to adopt them. *See* Iowa Code § 600A.8(3)(b), (4). The juvenile court appointed a guardian ad litem, who recommended termination.

After a one-day hearing, the juvenile court terminated the father's parental rights. First, the court found the father failed to pay child support without good cause. *See id.* § 600A.8(4). The court rejected the father's testimony that he was unaware of any obligation to pay, finding that explanation "not remotely credible." And the court further found that while the father was not consistently employed, he still performed odd jobs and could have used a portion of those funds to pay child support. Second, the juvenile court found the father failed to maintain "substantial

---

[1] The father also saw the children at a park in May 2023, though he ran into them by chance and it was not a scheduled visit.

and continuous or repeated contact" with the children. *See id.* § 600.8(3)(b). The father repeatedly passed on chances to see his children, even when the mother offered to bring the children close to his location. Nor did he avail himself of any other chances to participate in his children's lives—he "took no steps to contact his children via in-person visit, a letter, a card, a present, or any other communication." And third, the juvenile court found termination was in the children's best interests.

The father appeals challenging only whether the mother proved either of the two statutory grounds for termination.

II.

Private terminations of parental rights follow a two-step process. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). First, the petitioner must prove a ground for termination by clear and convincing evidence. *See* Iowa Code § 600A.8. Second, the petitioner must similarly prove termination is in the children's best interests. *See id.* § 600A.1. We review both steps de novo, giving due weight to the juvenile court's credibility and factfinding determinations. *B.H.A.*, 938 N.W.2d at 232. And if the juvenile court terminates a parent's rights under multiple grounds, we may affirm so long as one ground is supported by sufficient evidence. *In re Kelley*, 262 N.W.2d 781, 784–85 (Iowa 1978).

"A parent has a basic obligation to support a minor child." *Klobnock v. Abbott*, 303 N.W.2d 149, 152 (Iowa 1981). If a parent falls short of that obligation by substantially failing to make ordered child-support payments without good cause, then the juvenile court may terminate that parent's rights under section 600A.8(4). *Id.* Our good-cause inquiry largely focuses on a parent's ability to pay. *In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998).

On appeal, the father disputes whether the mother proved he was financially able to make payments between August 2022 and the termination hearing in December 2023. He argues he was not required to save any of the house proceeds for child support, his lack of transportation kept him from securing steady employment, and he had to resort to low-paying, odd jobs during this time. But like the juvenile court, we find the father was able to pay.

The father received roughly $12,000 in August 2022 and did not set $75— or any other amount—aside for his children that month or any month going forward. The father believed paying off debt and buying a car were more pressing priorities. But how the father preferred to spend his money is separate from whether the father could provide some support to his children. The house proceeds were indeed a source of funds to pay some amount of child support—the father just chose to spend it elsewhere. *See Kelley*, 262 N.W.2d at 785 (finding father was "financially able to contribute some amount" of child support "but he voluntarily chose not to do so").

The father also received a range of compensation for his jobs. On some jobs, the father would only receive $30 or so. But on other jobs, the father received $200 or $700. Yet he never set aside any amount from these jobs for his children. *See In re C.M.W.*, 503 N.W.2d 874, 876 (Iowa Ct. App. 1993) (finding parent could pay child support although parent was sporadically employed with "only low-paying jobs"). Thus, clear and convincing evidence supports terminating the father's rights under section 600A.8(4).

Because the father does not address the juvenile court's best-interests analysis on appeal, we thus affirm the district court's termination of his parental right.  *See* Iowa R. App. P. 6.903(2)(a)(8)(3).

**AFFIRMED.**